JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

## DEFENDANTS

**(b)**   County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

❒ 1   U.S. Government
Plaintiff

❒ 3   Federal Question
(U.S. Government Not a Party)

❒ 2   U.S. Government
Defendant

❒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated or Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated and Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❒ 610 Agriculture | ❒ 422 Appeal 28 USC 158 | ❒ 400 State Reapportionment |
| ❒ 120 Marine | ❒ 310 Airplane | ❒ 362 Personal Injury - | ❒ 620 Other Food & Drug | ❒ 423 Withdrawal | ❒ 410 Antitrust |
| ❒ 130 Miller Act | ❒ 315 Airplane Product | Med. Malpractice | ❒ 625 Drug Related Seizure | 28 USC 157 | ❒ 430 Banks and Banking |
| ❒ 140 Negotiable Instrument | Liability | ❒ 365 Personal Injury - | of Property 21 USC 881 | | ❒ 450 Commerce |
| ❒ 150 Recovery of Overpayment | ❒ 320 Assault, Libel & | Product Liability | ❒ 630 Liquor Laws | **PROPERTY RIGHTS** | ❒ 460 Deportation |
| & Enforcement of Judgment | Slander | ❒ 368 Asbestos Personal | ❒ 640 R.R. & Truck | ❒ 820 Copyrights | ❒ 470 Racketeer Influenced and |
| ❒ 151 Medicare Act | ❒ 330 Federal Employers' | Injury Product | ❒ 650 Airline Regs. | ❒ 830 Patent | Corrupt Organizations |
| ❒ 152 Recovery of Defaulted | Liability | Liability | ❒ 660 Occupational | ❒ 840 Trademark | ❒ 480 Consumer Credit |
| Student Loans | ❒ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❒ 490 Cable/Sat TV |
| (Excl. Veterans) | ❒ 345 Marine Product | ❒ 370 Other Fraud | ❒ 690 Other | | ❒ 810 Selective Service |
| ❒ 153 Recovery of Overpayment | Liability | ❒ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❒ 350 Motor Vehicle | ❒ 380 Other Personal | ❒ 710 Fair Labor Standards | ❒ 861 HIA (1395ff) | Exchange |
| ❒ 160 Stockholders' Suits | ❒ 355 Motor Vehicle | Property Damage | Act | ❒ 862 Black Lung (923) | ❒ 875 Customer Challenge |
| ❒ 190 Other Contract | Product Liability | ❒ 385 Property Damage | ❒ 720 Labor/Mgmt. Relations | ❒ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❒ 195 Contract Product Liability | ❒ 360 Other Personal | Product Liability | ❒ 730 Labor/Mgmt.Reporting | ❒ 864 SSID Title XVI | ❒ 890 Other Statutory Actions |
| ❒ 196 Franchise | Injury | | & Disclosure Act | ❒ 865 RSI (405(g)) | ❒ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❒ 892 Economic Stabilization Act |
| ❒ 210 Land Condemnation | ❒ 441 Voting | ❒ 510 Motions to Vacate | ❒ 790 Other Labor Litigation | ❒ 870 Taxes (U.S. Plaintiff | ❒ 893 Environmental Matters |
| ❒ 220 Foreclosure | ❒ 442 Employment | Sentence | ❒ 791 Empl. Ret. Inc. | or Defendant) | ❒ 894 Energy Allocation Act |
| ❒ 230 Rent Lease & Ejectment | ❒ 443 Housing/ | **Habeas Corpus:** | Security Act | ❒ 871 IRS—Third Party | ❒ 895 Freedom of Information |
| ❒ 240 Torts to Land | Accommodations | ❒ 530 General | | 26 USC 7609 | Act |
| ❒ 245 Tort Product Liability | ❒ 444 Welfare | ❒ 535 Death Penalty | | | ❒ 900Appeal of Fee Determination |
| ❒ 290 All Other Real Property | ❒ 445 Amer. w/Disabilities - | ❒ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ❒ 550 Civil Rights | | | to Justice |
| | ❒ 446 Amer. w/Disabilities - | ❒ 555 Prison Condition | | | ❒ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ❒ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

❒ 1   Original
Proceeding

❒ 2   Removed from
State Court

❒ 3   Remanded from
Appellate Court

❒ 4   Reinstated or
Reopened

❒ 5   Transferred from
another district
(specify)

❒ 6   Multidistrict
Litigation

❒ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❒ Yes   ❒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE  DISTRICT OF PENNSYLVANIA

Walter A. Chruby,
         Plaintiff,

           v.

Jeffrey A. Beard, Ph.D., Secretary, Pennsylvania
Department of Corrections; Catherine C. McVey,
Director of the Bureau of Health Care Services,
PADOC;  Frederick  Maue,  M.D.,  Medical
Director,  Bureau  of  Health  Care  Services,
PADOC; Arrow Beral, D.O., Assistant Medical
Director,  Bureau  of  Health  Care  Services,
PADOC; Frank N. Gillis, Superintendent, SCI
COAL; Martin L. Dragovich, Superintendent,
SCI Chester; Wilma J. Sewell, R.N., Health Care
Administrator, COAL; Stanley M. Stanish, M.D.,
Medical Director SCI COAL; Philip C. Breen,
M.D.; B.V. Robinson, M.D.; Brian Davis, PA-C;
Donald Miller, PA-C; American Services Group,
Inc.; Prison Health Services, Inc.; Carl J. Keldie,
M.D., Corporate Medical Director, PHS; Rodney
D. Holliman, Group Vice President, Operations,
PHS, DOES 1 - 10.
              Defendants.

CIVIL ACTION NO:

**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT**

      1.      Plaintiff, Walter A. Chruby, an inmate in the custody of the Commonwealth of

Pennsylvania, Department of Corrections, has a long-standing history of acute and chronic kidney

stones disease.  Without exaggeration, he has experienced hundreds of episodes of kidney stones in

his lifetime.

      2.      Kidney stones are hard, solid pellets that form in the urinary tract and can cause one

of the most painful ailments known to man. In many cases they are very small and can pass out of

1

the body without any problems. But if a stone (even a small one) becomes lodged in the urinary tract and blocks the flow of urine, excruciating pain and infection may result. The condition will develop into an emergent condition if prompt medical intervention is not provided. Kidney stones may cause kidney failure in people who possess the following risk factors; (1) frequent recurrence of kidney stones, (2) accompanying episodes of urinary tract infections with obstruction; (3) a particular risk with struvite stones, (4) a history of multiple urologic procedures for kidney stones, (5) greater size of the kidney stone gravel. Mr. Chruby possesses these enumerated risk factors.

3.      In 1987, Mr. Chruby underwent a surgical procedure to prevent obstruction by kidney stone blockage in his ureter and allow urine to drain directly into his bladder. Mr. Chruby's kidneys were transplanted from their original anatomical location to the pelvic region and connected directly into his bladder. Following this procedure, Mr. Chruby lost his left kidney. Mr. Chruby's renal function is totally dependent on the functioning of his remaining kidney. The fragility of Mr. Chruby's condition cannot be denied.

4.      In 1997, Mr. Chruby was remanded to the custody of the Department of Corrections and placed at the Coal Township State Correction Institute (COAL).

5.      On November 18, 2003, Mr. Chruby exhibited symptoms of kidney stone(s) disease and a urinary tract infection. Despite obvious physical pain, and the clinical signs and symptoms of kidney stones, infection, and severe pain, he went untreated for almost one month.

6.      On November 26, 2003, Mr. Chruby filed for an Ex Parte Preliminary Injunction in the Court of Common Pleas for Northumberland County, Pennsylvania to compel examination by a urologist.

7.      On November 26, 2003, the Honorable Wm. Harvey Wiest, Judge of the Court of Common

Pleas, Northumberland County, Pennsylvania entered an Order granting Mr. Chruby's request for a Preliminary Injunction and directed Frank N. Gillis, Superintendent of COAL to deliver Mr. Chruby to the Shamokin General Hospital for examination by a urologist within 24 hours of the posting of a bond.  The bond was posted on December 2, 2003.

8.     Over the course of the next three weeks, Mr. Chruby's condition continued to go undiagnosed and untreated.  His medical and physical condition deteriorated dramatically to the point of acute renal failure.

9.     Finally on December 13, 2003, Mr. Chruby was transferred to the Thomas Jefferson University Hospital Emergency Room in Philadelphia, Pennsylvania for surgery and treatment of the kidney stones and the concurrent infection.

10.     Following discharge from Thomas Jefferson University Hospital, Mr. Chruby returned to COAL where he again experienced a recurrence of kidney stone(s) disease, infection and extreme physical pain.  Mr. Chruby also experienced the same delay in diagnosis, treatment and care with accompanying physical pain and kidney damage that he previously experienced, until he was readmitted to Thomas Jefferson University Hospital.

11.     Mr. Chruby brings this action seeking monetary and equitable relief pursuant to the laws of the United States of America and the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

12.     The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 1331 in that this civil action arises under the Constitution and laws of the United States.

13.     The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 1343 in that this civil action seeks to recover damages;

a.    For injury to persons because of the deprivation of Plaintiff's civil rights and

privileges;

b.    For injury from persons who failed to prevent and/or aided in the deprivation of the

rights and privileges afforded Plaintiff;

c.    From persons who failed to prevent or to aid in preventing the deprivation of the

rights and privileges afforded Plaintiff;

d.    Damages or secure equitable or other relief afforded Plaintiff under an Act of

Congress providing for the protection of civil rights.

14.    Venue is proper in the United States District Court for the Middle District of Pennsylvania

pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise

to this claim occurred within this judicial district.

## EXHAUSTION

15.    Mr. Chruby has exhausted such administrative remedies as were available to him.  The denial

of Mr. Chruby's grievance is attached.

## PARTIES

16.    Plaintiff, Walter A. Chruby, is a prisoner in the custody of the Pennsylvania Department of

Corrections who is currently incarcerated at SCI Laurel Highlands, Pa.  He is a citizen of the United

States.

17.    Defendant, Jeffrey A. Beard, Ph.D., is the Secretary of the Pennsylvania Department of

Corrections, (PADOC). At all times here relevant, November 2003 through February 2004, he was

responsible for PADOC's daily functioning and administration.  He is sued in his official capacity.

18.    Defendant, Catherine C. McVey,  Director of the Bureau of Health Care Services for the

PADOC, at all times here relevant, November 2003 through February 2004. She was responsible for planning, organizing, directing and administering the health care services for the inmate population of PADOC. Mr. Chruby was a recipient of health care services from the PADOC. She is sued in her official and individual capacities.

19.    Defendant, Frederick Maue, M.D., Medical Director, Bureau of Health Care Services, PADOC, at all times here relevant, November 2003 through February 2004. He was responsible for planning, organizing, directing and administering the health care services for the inmate population of PADOC. Mr. Chruby was a recipient of health care services from the PADOC. He is sued in his official and individual capacities. Defendant is a licensed professional with offices in Cumberland County, Pennsylvania. Plaintiff is asserting a professional liability claim against this Defendant.

20.    Defendant, Arrow Berel, D.O., is the Assistant Medical Director, Bureau of Health Care Services, PADOC, at all times here relevant, November 2003 through February 2004. He was responsible for planning, organizing, directing and administering the health care services for the inmate population of PADOC. Mr. Chruby was a recipient of health care services from the PADOC. He is sued in his official and individual capacities. Defendant is a licensed professional with offices in Cumberland County, Pennsylvania. Plaintiff is asserting a professional liability claim against this Defendant.

21.    Defendant, Frank N. Gillis, is the Superintendent of SCI Coal Township, Pennsylvania. (COAL). At all times here relevant, November 2003 through February 2004, he was responsible for COAL's daily functioning and administration. He is sued in his official and individual capacities.

5

22.    Defendant, Martin L. Dragovich, is the Superintendent of SCI Chester, Pennsylvania. (CHESTER). At all times here relevant, November 2003 through February 2004, he was responsible for CHESTER's daily functioning and administration.  He is sued in his official and individual capacities.

23.    Defendant, Wilma J. Sewell, R.N., is the Health Care Administrator at COAL. At all times relevant, November 2003 through February 2004, she was responsible for planning, organizing, directing and administering the health care services for the inmate population at COAL. Mr. Chruby was a recipient of health care services at COAL.    She is sued in her official and individual capacities.  Defendant is a licensed professional with offices in Cumberland County, Pennsylvania. Plaintiff is asserting a professional liability claim against this Defendant.

24.     Defendant DOE 1, whose identity is unknown to Plaintiff, was the CHESTER Health Care Administrator in December 2003 through February 2004.  At all times relevant, November 2003 through February 2004, Defendant DOE 1 was responsible for planning, organizing, directing and administering the health care services for the inmate population at CHESTER.  Mr. Chruby was a recipient of health care services at CHESTER.  Defendant DOE 1 is sued in official and individual capacities.

25.    Defendant, Stanley M. Stanish, M.D., is the Medical Director for COAL, at all times relevant, November 2003 through February 2004.  He was responsible for planning, organizing, directing and administering the health care services for the inmate population at COAL. Mr. Chruby was a recipient of health care services at COAL.   He is sued in his official and individual capacities. Defendant is a licensed professional with offices in Cumberland County, Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

26.     Defendant, Philip C. Breen, M.D., is a medical doctor providing medical treatment at COAL, at all times relevant, November 2003 through February 2004.  He was responsible for planning, organizing, directing and administering the health care services for the inmate population at COAL. Mr. Chruby was a recipient of health care services at COAL.   He is sued in his official and individual  capacities.  Defendant is a licensed professional with offices in Cumberland County, Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

27.     Defendant, B.V. Robinson, M.D., is a medical doctor providing medical treatment at CHESTER, at all times relevant, November 2003 through February 2004.  He was responsible for planning, organizing, directing and administering the health care services for the inmate population at COAL. Mr. Chruby was a recipient of health care services at CHESTER.  He is sued in his official and individual  capacities.  Defendant is a licensed professional with offices in Cumberland County, Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

28.     Defendant, Brian Davis, PA-C, is a physician's assistant at COAL, at all times relevant, November 2003 through February 2004.  He was responsible for planning, organizing, directing and administering the health care services for the inmate population at COAL. Mr. Chruby was a recipient of health care services at COAL.   He is sued in his official and individual capacities. Defendant is a licensed professional with offices in Cumberland County, Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

29.     Defendant, Donald Miller, PA - C, is a physician's assistant at COAL, at all times relevant, November 2003 through February 2004.  He was responsible for planning, organizing, directing and administering the health care services for the inmate population at COAL. Mr. Chruby was a recipient of health care services at COAL.   He is sued in his official and individual capacities.

Defendant is a licensed professional with offices in Cumberland County, Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

30.     Defendant, American Service Group, Inc. (AMERICAN), is a for-profit corporation with its principal place of business at 105 West Park Drive, Suite 200, Brentwood, TN 37027.  AMERICAN provides health care services to the inmate population at COAL through its subsidiary, Prison Health Services, Inc.  AMERICAN provides health care and/or professional medical services at COAL and to Plaintiff.

31.     Defendant, AMERICAN, by and through its wholly owned subsidiary Prison Health Services, Inc., contracted with PADOC to provide medical care services at COAL and CHESTER.

32.     Defendant, Prison Health Services, Inc. (PHS) is a for-profit corporation with its principal place of business in the Commonwealth of Pennsylvania at 1635 Market Street, Philadelphia, PA 19103.  PHS with its parent AMERICAN contracted with PADOC to provide medical care services at COAL and CHESTER.  PHS provides health care and/or professional medical services at COAL and to Plaintiff.

33.     Defendant, Carl J. Keldie, M.D., is or was the corporate medical director for PHS, in charge of overseeing the medical services contract with PADOC.  Keldie, or his successor in that position, is responsible for the overall administration of medical services to prisoners at COAL and CHESTER.  He is sued in his official and individual capacities.  Defendant is a licensed professional with offices outside of the Commonwealth of Pennsylvania.  Plaintiff is asserting a professional liability claim against this Defendant.

34.     Defendant, Rodney D. Holliman, is the Group Vice President for PHS.  Holliman, or his successor in that position, is responsible for the quality and adequacy of medical services provided

to prisoners at COAL and CHESTER.   He is sued in his official and individual capacities.

35.      Defendants DOE 2 through DOE 10 are employees of Defendants American Services Group,

Inc. and/or Prison Health Services, Inc. who provided medical care and treatment at COAL.

36.      At all times here relevant, November 2003 through February 2004,  Defendants Keldie,

Holliman, Sewell, Stanish, Breen, Robinson, Davis and Miller were the employees of Defendants

AMERICAN and PHS, and were acting within the course and scope of their employment.

37.      Alternatively, at all times here relevant, November 2003 through February 2004, Defendants

Keldie, Holliman, Sewell, Stanish, Breen, Robinson, Davis and Miller were the agents and servants

of Defendants AMERICAN and PHS.

38.      At all times here relevant, Defendants AMERICAN and PHS were the agent, servant, and

employee of the other and all times here relevant, November 2003 through February 2004 were

acting  within the course and scope of said agency, service and employment.

## STATEMENT OF CLAIM

39.      Plaintiff, Walter Chruby, an inmate in the custody of the Commonwealth of Pennsylvania,

Department of Corrections, has a long-standing history of acute and chronic kidney stones disease.

40.      Mr. Chruby's renal condition and his susceptibility to the formation of kidney stones was

well known to Defendants.

41.      On November 7, 2003, blood and urine specimens were obtained from Mr. Chruby for

urinalysis and culture and sensitivity.  A culture and sensitivity test determines the presence of

infection and identifies antibiotic medication which is effective in treating the infection.  Mr. Chruby

was not advised of the results of these laboratory tests.

42.      On November 13, 2003, Mr. Chruby reported to sick call at the COAL infirmary where, upon

physical examination, blood was noted to be present in his urine.  Defendants diagnosed this condition as hematuria, the finding of blood in the urine.

43.     Following the November 13, 2003, physical examination, Defendants received a copy of the urinalysis and culture and sensitivity results from the November 7, 2003 specimen analyses.  This report indicated the presence of a staph infection.  This urinalysis report indicated levels of protein, WBC and RBC, BUN, creatinine and uric acid that were substantially outside of the normal human range.  The elevated levels also were highly indicative of the presence of kidney stones.  Mr. Chruby was not notified of the laboratory findings.  No appropriate medical treatment for Chruby's condition was administered by Defendants.  No antibiotic medication was prescribed.

44.     On November 14, 2003, Mr. Chruby reported to sick call at the COAL infirmary in pain and complaining of blood in the urine. Following a physical examination, Mr. Chruby was diagnosed with a recurrent urinary tract infection.  No appropriate medical treatment for Mr. Chruby's condition was administered by Defendants.

45.     On November 17, 2003, an x-ray of Mr. Chruby's kidney, ureter and bladder were taken. The imaging study report showed the presence of kidney stones.  This report was not reviewed by Defendants until November 20, 2003.  Mr. Chruby was not advised, timely, of the findings of the radiologist.  No appropriate medical treatment for Mr. Chruby's condition was administered by Defendants.

46.     On November 18, 2003, Mr. Chruby reported to sick call at the COAL infirmary in tears, shaky, in severe pain.  He vomited twice during the physical examination by a physician's assistant. Mr. Chruby was found to have a fever, and unable to hold down medication without vomiting. Infirmary personnel noted Mr. Chruby was in pain.  Pain medication was the only treatment provided

by Defendants.  At no time was Mr. Chruby referred to a urologist or a nephrologist or to a medical care facility capable of diagnosing and treating Mr. Chruby.  No appropriate medical treatment for Mr. Chruby's condition was administered by Defendants.

47.      As of November 18, 2003, by symptoms, clinical presentation, diagnostic and imaging studies, Mr. Chruby presented the hallmarks of kidney stone(s) disease and a serious infection.  Mr. Chruby's condition presented an emergent medical situation.  Defendants failed to diagnose Mr. Chruby.  No appropriate medical treatment for Mr. Chruby's condition was administered by Defendants.

48.      Defendants, nonetheless, knew, as of November 18, 2003, Mr. Chruby was in need of emergent medical treatment for the kidney disease and infection.  Defendants knew that a lack of medical care and treatment presented to Mr. Chruby a risk of unchecked pathology that could lead to serious, adverse effects to his renal system.  No appropriate medical treatment for Mr. Chruby's condition was administered by Defendants.

49.      On November 20, 2003, Mr. Chruby was prescribed antibiotic medication.  Antibiotic medication was not administered until November 22, 2003.  The prescribed, appropriate antibiotic was not administered.  However, a substitute antibiotic of questionable efficacy was administered.  No appropriate medical treatment for Mr. Chruby's condition was administered by Defendants.

50.      On November 26, 2003, Mr. Chruby sought a preliminary injunction from the Court of Common Pleas, Northumberland County, Pennsylvania, to compel Defendants to have Mr. Chruby examined by a urologist.

51.      The preliminary injunction was granted on November 26, 2003, and effective upon the posting of a bond, which was done on December 2, 2003.

52.     Between November 22, 2003 and December 2, 2003, no appropriate medical treatment for

Mr. Chruby's condition was administered by Defendants. Mr. Chruby languished in severe pain, and

the progress of his infection, unchecked, adversely compromised the function of his remaining

kidney, increased the risk of the need for invasive surgery, and increased the adverse risk of kidney

failure and mortality.

53.     On December 4, 2003,  Mr. Chruby was evaluated by a urologist.  The recommendation of

the urologist was for emergent medical treatment at a facility capable of diagnosing and treating Mr.

Chruby's kidney stone(s) and infection.

54.     Between December 4, 2003 and December 11, 2003, Mr. Chruby remained under the care

of Defendants at the COAL infirmary.  This medical facility lacked the capability to diagnose and

treat Mr. Chruby's worsening emergent medical condition.

55.     Defendants knew that the COAL infirmary lacked the capability of diagnosing and treating

Mr. Chruby's worsening emergent medical condition.

56.     Defendants knew that Mr. Chruby required hospitalization in a medical facility capable of

treating and diagnosing Mr. Chruby's worsening emergent medical condition.

57.     Defendants knew, that in the immediate vicinity of COAL, there were medical facilities

capable of treating and diagnosing Mr. Chruby's worsening emergent medical condition.

58.     Defendants knew that Mr. Chruby required medical attention and treatment from medical

specialists  in the fields of nephrology and urology.

59.     Defendants knew, that in the immediate vicinity of COAL, there were medical specialists

practicing in the fields of nephrology and urology.

60.     Defendants knew that Mr. Chruby was in extreme physical pain due to his worsening

emergent medical condition.

61.     Despite Defendants' knowledge the COAL infirmary lacked the ability to diagnose and to treat Mr. Chruby's serious and chronic kidney disease and infection; that Mr. Chruby needed off-site medical care and treatment at facilities which were nearby; that Mr. Chruby needed treatment from medical specialists in the fields of nephrology and urology, and that such medical specialists were available only at off-site, nearby locations; that Mr. Chruby's condition was life threatening, and that he was in extreme pain, Defendants did nothing and allowed Mr. Chruby to deteriorate in the infirmary and prison at COAL.

62.     On December 11, 2003, Mr. Chruby was transferred from COAL to CHESTER, an approximate 3-hour drive south of COAL, by passing the previously mentioned medical facilities and specialists.  Mr. Chruby was told the transfer was to provide  medical treatment at Thomas Jefferson University Hospital in Philadelphia, Pennsylvania.

63.     From December 11, 2003 through December 13, 2003, Mr. Chruby was housed in the CHESTER infirmary in great physical pain and in obvious need for emergent medical care and treatment.  Defendants did not provide appropriate medical treatment or admit him to Thomas Jefferson University Hospital.

64.     By the afternoon of December 13, 2003, Mr. Chruby's physical condition deteriorated to such an extent that he was in a state of acute renal failure.  Mr. Chruby was in such distress that he was transported to and admitted into the Emergency Room at Thomas Jefferson University Hospital.

65.     Between December 13, 2003 and December 19, 2003, Mr. Chruby was treated at the Thomas Jefferson University Hospital, undergoing an invasive surgical procedure of the kidney during which a 3 cm. kidney stone was removed.

66.     Between December 23, 2003 and January 4, 2004, Mr. Chruby was placed in the COAL infirmary where he exhibited symptoms, clinical presentation, and findings of kidney stone(s) disease and serious infection.  He was in severe pain, and despite the availability of appropriate medical facilities and appropriate medical specialists within the vicinity of COAL, Defendants failed to provide Mr. Chruby with prompt, appropriate medical care and treatment for his medical condition.

67.     On January 6, 2004, Mr. Chruby was transferred to CHESTER for a second admission to Thomas Jefferson University Hospital in Philadelphia, Pennsylvania, where he remained until February 2003.

68.     In September 2003, PADOC contracted with PHS, and through it, AMERICAN, to provide medical care and services to prisoners incarcerated at PADOC facilities, including COAL.

69.     Under the terms of its contract with PHS and AMERICAN, consistent with its obligations under state and federal law, PADOC remains responsible for the medical care of prisoners in its custody, and has the contractual right to review and approve PHS and AMERICAN policies and procedures, monitor AMERICAN and PHS performance, and approve key PHS and AMERICAN personnel.

70.     Defendants provided Mr. Chruby with grossly inadequate access to health care.  Defendants' medical staff truly ignored his request for urgent care in light of his serious, emergent, and painful medical condition.

71.     Defendants' medical staff lacked the ability to diagnose Mr. Chruby's serious and chronic physical condition, and he was denied essential monitoring and ongoing care.  The treatment that Defendants provided  Mr. Chruby fell below well-established standards of care that are widely accepted by the medical community.

14

72.     Defendants' medical staff failed to monitor Mr. Chruby's medical condition.  Mr. Chruby was routinely subjected to lapses in treatment and erratic prescription drug delivery.

73.     Defendants' medical staff was unable and/or failed to make appropriate and timely treatment decisions, monitor the care provided Mr. Chruby, or determine whether prescriptions were timely administered to Mr. Chruby.

74.     Mr. Chruby was often denied accurate information about his medical condition, the results of medical testing, even when the results were abnormal.

75.     Even for Mr. Chruby's well documented renal disease, Defendants' medical staff forced him to plead for basic medical treatment, follow-up treatment and medication refills, ignored cries of pain, and requests for the most basic medical treatment.

76.     In light of Defendants' medical staff's failure to provide even the basic medical treatment required by one suffering from kidney stone(s) and infection, Mr. Chruby was compelled to resort to the courts to obtain medical treatment.

77.     Defendants' medical staff was discouraged from referring Mr. Chruby to off-site medical consultation even though his medical condition was serious and life threatening.  As a result, Mr. Chruby who was in need of off-site specialists and medical facilities, was not referred for such treatment until he was at the stage of acute renal failure.

78.     Defendants' failure to properly diagnose and treat Mr. Chruby through prompt referral to off-site specialists and medical facilities resulted in pain, suffering, increased medical complication and the risk of premature death.

79.     As a result of the conduct of Defendants, Mr. Chruby suffered physical injury.

80.     As a result of the conduct of Defendants, Mr. Chruby's condition became exacerbated,

15

increasing the intensity of his pain, increasing the necessity for extended hospitalization, and requiring medical intervention, surgery, and other procedures which, otherwise, would have been unnecessary.

81.    As a result of the conduct of Defendants, Mr. Chruby was caused to suffer, and will permanently suffer, damage to his remaining kidney.

82.    As a result of the conduct of Defendants, Mr. Chruby is at an increased risk of the loss of function of his remaining kidney, increased the risk of renal replacement with dialysis therapy, increased his mortality, increased the risk of cardiovascular disease, and subject to a diminished quality of life.

83.    As a result of the conduct of Defendants, Mr. Chruby has suffered pain, severe emotional distress, humiliation, embarrassment, and the loss of life's pleasures.

84.    Defendants acted under the color State statute, ordinance, regulation, custom, or usage.

85.    The conduct of Defendants constitutes a practice and pattern of denial of rights, privileges and immunities guaranteed by the Constitution and laws of the United States.

## CLAIMS FOR RELIEF
## COUNT I
## EIGHTH AMENDMENT

86.    By consciously subjecting Mr. Chruby to the grossly inhumane and dangerous conditions of confinement and to the extreme deprivation to basic medical care described herein, Defendants have acted, and continue to act, with deliberate indifference to Mr. Chruby's serious health and safety needs, and have violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

## COUNT II
## RETALIATION

87.     The conduct of Defendants from November 26, 2003, onward, in delaying and denying Mr.

Chruby appropriate and necessary medical care and treatment was designed to frustrate, impede, and

in retaliation for the exercise of his right to access the Courts for a redress of grievance in violation

of Mr. Chruby's rights guaranteed by the Constitution of the United States and 42 U.S.C. § 1997d,

42 U.S.C. § 1983,  42 U.S.C. § 1985, and 42 U.S.C. § 1986.

## COUNT III
## AMERICANS WITH DISABILITIES ACT

88.     Mr. Chruby is a "qualified individual with a disability within the meaning of 42 U.S.C. §

12131(2).

89.     The Pennsylvania Department of Corrections is a public entity within the meaning of 42

U.S.C. § 12131(1)(B).

90.     Mr. Chruby is qualified to participate in the health care services provided by PADOC through

AMERICAN and PHS.

91.     Mr. Chruby was not allowed to benefit from and was subjected to discrimination in the health

care services program because of his disability.

## COUNT IV
## MEDICAL NEGLIGENCE

92.     The conduct of Defendants as more fully set forth in this Complaint constitutes negligence.

### PRAYER FOR RELIEF

        WHEREFORE, Mr. Chruby respectfully requests that this Honorable Court:

1)    Issue a judgment declaring that the actions of Defendants described herein are unlawful and violate Mr. Chruby's rights under the Constitution, the laws of the United States, and the laws of the Commonwealth of Pennsylvania;

2)    Preliminarily and permanently enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them, from subjecting Mr. Chruby to the conditions set forth in this complaint, and requiring that he receive prompt, adequate medical treatment;

3)    Award compensatory damages against each Defendant, jointly and severally;

4)    Award punitive damages against each Defendant, jointly and severally;

5)    Retain jurisdiction over said Defendants until such time as this Honorable Court is satisfied that Defendants' unlawful policies, practices, acts and omissions no longer exist and will no longer occur;

6)    Order reasonable attorneys fees and costs; and

7)    Award such further relief as the Court deems just and proper.

Respectfully submitted,

/S/ Edward J. Carreiro, Jr.
Edward J. Carreiro, Jr.
Attorney for Plaintiff, Walter A. Chruby

Edward J. Carreiro, Jr.
Attorney I.D. No. 37335
262A Bethlehem Pike
Suite 102
Colmar, PA 18915
(215) 712-9500
(215) 712-9510 - FAX

18

DC-ADM 804, Inmate Grievance System                                                    Attachment B

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE

INITIAL REVIEW RESPONSE                                        GRIEVANCE    | 68127 |
NO.

| TO:<br>Walter Chruby,  DT-2129 | FACILITY<br>SCI-Coal Township | HOUSING<br>LOCATION<br>D-A-39 | GRIEVANCE<br>DATE<br>11-19-03 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

Mr. Chruby,

Please be advised, after careful review of your medical chart, you are receiving antibiotics and you are scheduled to see an Urologist.

We will take into consideration the Urologist's findings in regards to your current problem.

If you need immediate treatment, please sign up for Sick Call.

WJS/mp

CC:   Kandis Dascani, Superintendent Assistant
      Inmate Records, DC-15
      Unit Manager
      File

*This is the only response ever received. Civil Suit & Preliminary Injunction filed after this.*

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| Wilma J. Sewell | | |
| Health Care Administrator | *Wilma J. Sewell HCA* | 112603 |